Lellyett & Rogers, Inc. v. Commissioner.
Lellyett & Rogers, Inc. v. Commissioner
Docket No. 8310.
United States Tax Court
1946 Tax Ct. Memo LEXIS 54; 5 T.C.M. (CCH) 884; T.C.M. (RIA) 46250; October 18, 1946
*54 Upon the facts, held, the compensation paid petitioner's salesman and general manager was reasonable. Held, also, golf club dues paid by petitioner are not deductible as a business expense. John M. Barksdale, Esq., 520 Stahlman Bldg., Nashville, Tenn., for the petitioner. Frank M. Thompson, Jr., Esq., and S. Earl Heilman, Esq., for the respondent. ARNOLD Memorandum Findings of Fact and Opinion ARNOLD, Judge: The respondent determined deficiencies in income tax and excess profits tax for 1941 in the respective amounts of $832.79 and $295.12. The petitioner alleges that the respondent erred in disallowing $3,000.82 of the amount taken as a deduction for officers' salaries, and in disallowing a business expense deduction of $183.88 paid for dues at a golf club. Other errors alleged in the petition were abandoned. The facts are in part stipulated. Findings of Fact Petitioner is a corporation organized in 1933 under the laws of Tennessee. The aggregate stock outstanding in 1941 was 250 shares of no par value common stock issued at the rate of $20 per share, or a total of $5,000. Seventy-one shares were held by Roy R. Rogers, president of the corporation, 150 *55 shares by W. M. Lellyett, secretary and treasurer and general manager, 4 shares by Mrs. Milbrey Rogers Dugger, vice-president, and 25 shares by a person having no office or other connection with the corporation. The three officers constituted the board of directors. For the years from its organization through 1941 the aggregate sales and net earnings before taxes and the gross compensation of Lellyett and Rogers were as follows: Net Earnings
Compensation
Compensation
Year
Gross Sales
before Taxes
of Lellyett
of Rogers
1933
$22,096.71
$2,064.69
$ 2,257.18
$1,861.30
1934
36,005.14
1,775.47
4,828.16
3,003.10
1935
41,712.76
1,004.05
6,413.28
3,641.53
1936
42,776.48
1,303.06
7,902.43
4,203.91
1937
49,751.88
1,013.05
10,715.46
5,048.30
1938
51,103.33
927.94
9,932.64
4,557.84
1939
52,175.22
1,627.57
11,192.31
4,830.94
1940
52,062.60
367.25
11,809.37
4,900.00
1941
67,595.38
1,506.42
12,500.82
3,759.60
For the years 1937 to 1941 the compensation of Lellyett and Rogers consisted of the following amounts of commission and salary: Lellyett
Rogers
Year
Commission
Salary
Commission
Salary
1937
$6,715.46
$4,000.00
$748.30
$4,300.00
1938
6,932.64
3,000.00
732.84
3,825.00
1939
7,652.31
3,540.00
175.94
4,655.00
1940
7,809.37
4,000.00
None
4,900.00
1941
9,750.82
2,750.00
None
3,759.60
*56 Lellyett was the only salesman of petitioner in the year 1941. He served as general manager, estimator of costs and prices of jobs and as paper buyer and buyer of office supplies. He also originated designs and layouts for customers of the petitioner. He did the hiring of employees for petitioner, supervised the overall production schedule of the plant to make certain the jobs were produced on time and supervised the bookkeeping. His compensation for 1941 was made up $9,750.82 paid as 15 per cent commission on sales and $2,750 paid for services other than selling. The usual and customary commission paid in 1941 to printing salesmen in the vicinity of Nashville for producing business of the same nature as petitioner's was from 10 per cent to 25 per cent of sales. Lellyett in 1941 had 25 years of experience in the printing business. His experience and his ability to service the needs of his customers was advantageous to the petitioner in the type of printing done by the petitioner, consisting of small order specialized job printing. If he were to sever his connection with petitioner, a large percentage of his customers might be expected to transfer their business to his new employer. *57 Roy R. Rogers was president of petitioner and served as superintendent of the working plant, upon occasion performing various operations about the plant. In 1941 he was paid $3,759.60. In 1941 he had had about 34 years of experience in all branches of the printing business. Mrs. Dugger was vice-president of petitioner and served as bookkeeper and as one of the two clerks employed by petitioner in 1941. She was paid a salary of $1,404.00 for her services in the taxable year. The salaries and commissions paid in 1941 by petitioner to its three officers amounted to $17,664.42. Both Lellyett and Rogers worked long hours and often worked on Sundays and holidays. Through the life of the corporation they had an understanding that each should receive a commission of 15 per cent of the sales made by him plus commission for any other services performed. No dividends have ever been paid by the petitioner. The net earnings were kept in the business and used to increase the corporation's machinery and equipment. At the end of 1941 petitioner's balance sheet showed the following assets and liabilities: ASSETS
Cash
$ 304.71
Notes and accounts receivable
$ 9,389.41
Less: Reserve for bad debts
400.00
8,989.41
Supplies
2,986.00
Total depreciable assets
21,946.23
Less: Reserve for depreciation
8,923.98
13,022.25
Prepaid insurance
193.17
Total Assets
$25,495.54
LIABILITIES
Accounts payable
$ 9,509.66
Bonds, notes, and mortgages payable
1,200.00
Capital stock
5,000.00
Earned surplus and undivided profits
9,785.88
Total Liabilities
$25,495.54
*58 About 1940 Lellyett and Rogers joined the Richland Club, at the same time as did some of the corporation's best printing customers. In 1940 Lellyett started playing golf on some week ends. Some of the members with whom he played were customers, or representatives of customers, of petitioner. In 1941 the petitioner paid to Richland Club the sum of $183.88 on account with said club. A reasonable allowance for salaries or other compensation for personal services actually rendered the petitioner by its officers in 1941 is $17,664.42. This amount was an ordinary and necessary expense paid or incurred by the petitioner in the taxable year in carrying on its business. The amount of $183.88 paid by the petitioner to the Richland Club in 1941 was not a reasonable or necessary expense of the petitioner in carrying on its business. Opinion The petitioner deducted $17,664.42 as compensation of its three officers in 1941. The respondent disallowed $3,000.82 of the total as excessive. The respondent concedes the reasonableness of the salaries paid Rogers and Mrs. Dugger, so the issue is narrowed to determining what is reasonable compensation for Lellyett for the year. The respondent contends *59 that $9,500 is a reasonable allowance. The petitioner paid $12,500.82. The respondent points out that Lellyett owned 150 shares of the 250 shares of petitioner's stock and thus was in a position to dictate the amount of his salary and that the petitioner never paid dividends. The respondent says that the petitioner adjusted the salaries of its officers from year to year so as to drain off all but a small amount of the earnings, and thus was paying dividends to Lellyett in the guise of salary. Lellyett received a commission of 15 per cent on all sales and additional compensation of $2,750 for services other than selling. The customary rate of commissions paid printing salesmen by other concerns was from 10 per cent to 25 per cent. The petitioner had always paid its salesmen 15 per cent commission, and Lellyett and Rogers had agreed from the beginning of petitioner's business that each would receive 15 per cent commission on his sales and an additional amount for his other services. After March 1939 Rogers devoted his time to managing the shop while Lellyett took over all the sales work. In 1941 there were 163 accounts active enough to buy printing about every month. Lellyett called *60 on these customers at least once a month and in many cases weekly. As a result of his sales efforts the petitioner had 3,520 printing jobs in 1941 averaging $16.28 each. Thus the petitioner's business consisted principally of small orders. Each job was specially designed to fill some particular need of the customer, such as the printing of office forms or price tags. In many of the printing jobs Lellyett made suggestions as to copy, or designed office forms for the customer, or advised as to the paper or ink best suited to the customer's purposes. He estimated the costs, and quoted prices to customers. The business had been built up through the years by careful attention to the customers' requirements and the specialized service rendered by Lellyett in this respect was an important factor in the petitioner's survival in a highly competitive field. Most of the customers would have given their business to Lellyett if he had left the petitioner and gone to another employer. We think the allowance of 15 per cent commission for his sales was clearly reasonable. In addition to selling Lellyett performed other services for which he received $2,750. He was general manager of the petitioner, *61 and as such hired whatever employees were necessary, supervised the bookkeeping, and coordinated the production throughout the plant to make certain that the most urgent jobs were done first. Also he was the sole buyer, attending to buying paper and inks and stationery. He worked long hours daily and worked many evenings and Sundays. The business was largely dependent upon the petitioner's ability to deliver on schedule what the customers wanted. There was testimony of two witnesses to the effect that a general manager performing services, other than selling, which Lellyett performed would command a salary of at least $4,000 or $5,000 a year. We think the petitioner has met the burden of showing that the amount paid Lellyett in 1941 was reasonable compensation for his services in that year. The respondent argues that since no dividends were ever paid by the petitioner, part of Lellyett's compensation was a payment of dividends to the controlling stockholder. Here the paid-in capital was $5,000. The balance sheet at the end of 1941 shows an earned surplus of $9,785.88. This is a 195 per cent of the capital, and is sufficient to cover a 20 per cent dividend upon the capital for each *62 of the nine years, 1933 to 1941, inclusive. This was left in the business and invested in more and better equipment. The corporation began with one hand-fed press in 1933 and invested in new equipment until in 1941 there were four or five presses, a complete type room and bindery and a new cutting machine. Also the stock of materials and stationery was increased. The net earnings for 1941 before taxes were $1,506.42 amounting to 30 per cent on the capital stock or 10 per cent on the capital and surplus. Where a substantial surplus remains, the mere fact that the corporation does not choose to pay dividends does not require a holding that the salaries paid are unreasonable. Petitioner paid $183.88 to the Richland Club, a golf club, as dues. The account was in the name of and was billed to the company. Lellyett testified that the club membership was bought because some of the petitioner's best customers joined the club at the same time in 1940 and that he played golf there on Saturday or Sunday afternoons with the same group of players which always included one or more representatives of customers of the petitioner. His wife and daughter did not visit the club in 1941. Petitioner contends *63 that this expense is deductible as an ordinary and necessary expense paid in carrying on the business. The burden is on the petitioner to show that the expenditure was primarily for business purposes rather than for personal use. Petitioner cites , reversed on other issues, CCA-9, , holding that under the facts therein a deduction of golf club dues was allowable. In that case the taxpayer did not enjoy playing golf and went to the club to meet and entertain prospective clients. He gave the names of several clients secured there, and attributed much of his business to contacts made at the club. The respondent cites , and other cases. In the Louis Boehm case, the Board pointed out that where deduction of expenses of a social nature has been allowed, it has been proved that the expenditure had a direct relation to the conduct of the business or the business benefits expected. In this case we have no information as to the use made of the club by Rogers or his family, and no information as to the names of new customers or the amount of any business believed to have *64 been derived from the contacts of petitioner's officers made through the club. The argument is made that the personal relationships already existing between Lellyett and certain representatives of customers were maintained and cultivated through their association in playing golf from time to time on week ends. Some of the petitioner's business may have been incidental to the improved relations resulting from contracts of Lellyett with the customers' representatives at the club, but this is too vague and speculative to warrant allowance of the dues as a business expense. Petitioner has not sustained the burden of showing the expenditure to be a necessary business expense rather than a personal expense of the corporation's officers. We hold for the respondent on this issue. Decision will be entered under Rule 50.